We are up to United States of America versus Benjamin Green Robinson. We'll hear first from Mr. Irvin. Good morning, honors. The case of Benjamin Robinson presents a different set of facts than the cases of Nunez and Sanders. Those facts does present different issues and therefore the Robinson matter should be reversed. Benjamin Robinson was accused of cocaine. That's what the indictment set forth specifically. That's what the jury instruction set forth specifically. Thus it became, in our opinion, a subset of the charged indictment. What the government did in this particular case, it presented certain evidence to and discovery to Mr. Robinson and we proceeded under a theory of a case based upon the evidence that was presented to us. We also proceeded on a theory of a case where Narong had not yet been held by this court to not truly be the cause case of the law of the case, or excuse me, the law of the 11th circuit. Specifically, why does it present different issues? Because if we take a look at Nunez, Nunez was a maritime drug trafficking case. They were on a small boat with a lot of cocaine, 400 pounds of cocaine with a lot of fuel. They also admitted the fact that they knew that they were transporting a controlled substance. What is different about Sanders? Well, Sanders was trafficking a trailer full of four, I believe it was 400 some odd or multiple keys, hundreds of keys of cocaine. So he had knowledge. In this particular case, their facts are should not have weight in this particular case that keeps us from ruling in Mr. Robinson's favor. Counsel, I'm sorry, but which issue are you addressing? That was an introduction statement, your honor. Well, but it sounded like they had some law and application law to facts in it. I just wondered if there was any, any issue you're addressing? Could you tell us what issue you're addressing? Well, specifically, the government has held that the fact that it was marijuana versus cocaine, which we had argued at trial, that it should not, it should not have any relevancy in the outcome of the particular case. Basically, that a controlled substance is all that needs to be known. And the exact substance is irrelevant. Which is what, which is what our decisions. That is correct, your honor. It appears, however, in the case of Nunez, we did have that specific fact, your honor, but Nunez had different set of facts where those people knew what the substance was and they had admitted what the substance was. The same thing can be said in Sanders. Sanders also said that it knew what it was. So your honor, what we're basically saying in our particular case is the fact that because of the way that the government pled its case or they, they sought an indictment and the way that the judge instructed the jury on the issue of cocaine, that it became a subset, a sub, a subset of the particular indictment that they needed. Those instructions are standard instructions. I imagine if we look in Sanders and Nunez, we're going to find those same instructions were given in those cases. Well, your honor, in this particular case, the United States, actually, they actually sought to exclude the cocaine from this particular case in the jury instruction. So our position was number one, is that, or just addressing that particular issue, is that we believe that they should have had to prove that the substance was cocaine. But even greater than that, to the fact comes back to the fact of them withholding from us certain discovery information, which dealt with Mr. Mr. Mr. Robinson's marijuana convictions. And then the marijuana. Let me, let me ask you about that. Um, my first concern about that is I'm not entirely sure that it's necessarily Brady in light of the fact that, well, two reasons really. One, I don't think that, um, Mr. Frini actually specifically said that Mr. Robinson was dealing exclusively in marijuana. And second, even assuming that he did, the agent admitted that on the stand that he also dealt in marijuana. So it seems like it would be cumulative. Why wouldn't it just be cumulative as opposed to, um, a Brady violation? It wouldn't be cumulative for the fact that your honor, what the court is unaware of is the fact that there was a charge against Ben Robinson with marijuana packaging, which had been intercepted at the United States post office, uh, just prior to this matter of him being indicted. And we knew for a fact that the United States had investigated Benjamin Robinson and they were denying the fact that he was trafficking in marijuana when they fully knew that. I'm sorry, counsel, when did they deny the fact that he was trafficking in marijuana? It seemed to me like the agent admitted that he knew he was also trafficking in marijuana. I think what the agent did, your honor, I took it as an agent trying to infer that he was, it is specific with regard to the packaging. And we thought that was very important in this particular case, because at that particular juncture, we were in the position that it was not cocaine that he was trafficking in, but it was marijuana that he was engaged in the distribution of that. Therefore, what? Therefore, he couldn't be convicted under this indictment. We've got decisions for closing that position. Your honor, maybe I interpret, I interpret some of the prior cases as saying something distinctly, slightly different that based upon the facts, I think if we took a look specifically at Nunez, it addresses the facts in Nunez and said that they were foreclosed in dealing with that particular issue because of the facts and the admitted facts in there that they were engaged in the trafficking of that particular, particular substance. The same could be said of Sanders. Well, Sanders said, because the specific amount and type of drugs are not elements of the 841-A1 offense, the government's failure to prove the amount or type charge in the indictment does not merit reversal, period, end of quote. And that's quoting Baker, which is 2005. And the fact that some other case had different facts and reached the same affirmance doesn't undermine the holdings of those two cases. Well, your honor, I understand that that is the holding in Sanders. We thought specifically the fact that the issue of what the substance, the controlled substance is, does come into play in certain particular instances. And we believe that this was one of those instances where the theory of our case, which was proceeded upon, was based upon the discovery of materials that was provided to us and the way that it was charged in the indictment and the way that the case was presented at trial. And the case was argued at trial by both sides. So you argued, jury, you can't convict him because he thought he was trafficking marijuana instead of cocaine. And I know that's kind of a double-edged sword, but you are correct, Judge Harns. Well, I'm more worried about ineffective assistance of counsel than the sword having two edges to it. Well, I understand what the law says. It makes no difference. And your whole theory of defense is that it does make a difference. Well, initially, your honor, our argument was he didn't know what the substance was at all in the particular package. That makes sense. That's not outside the wide range of professional assistance. I want to run in that regard, your honor. You're arguing now that it hurt your defense because your defense was he thought it was marijuana instead of cocaine. Let me clarify, your honor, so I can clarify for you. We took the position he didn't know what the contents was. We then backed that argument that Mr. Robinson did not even traffic. He didn't even deal with cocaine anymore. He didn't deal with it, period. So it's twofold, your honor, and I apologize if I didn't clarify that. He did not know what the substance of the package was. And I think Agent Dahl, even in his testimony, said he did not, that I think there's some testimony there where he admitted that he could not say that Ben Robinson knew what the contents of the package was. So it's twofold. And I wanted to come back on the particular fact that we had made the point that he doesn't even deal in cocaine. So I should have been, that if he was engaged in any type of drug dealing, he was dealing in marijuana, because I think the transcript also reflects that he had gotten away from dealing in cocaine, period, because the penalties were less severe. And I think the testimony even says that, that came forth at trial. So are you, just so I'm clear, Mr. Urban, are you basing your argument on the testimony from Agent Dahl, that alone, or is there, is there other evidence that he didn't know he was dealing, according to your argument, that he didn't know that he was dealing in cocaine? Well, yeah, Judge Pryor, I think that what we got was we got from the testimony, I think, of Agent Dahl, which stated that Mr. Feeney, the leader of the drug trafficking organization dealing in cocaine, had in fact stated that Benjamin Robinson was dealing in marijuana. So that came through Agent Dahl. Also, the recording which came following that also stated at the same time from Mr. Feeney, that Mr. Robinson was dealing in marijuana. Thank you. Thank you, Mr. Urban. You've reserved five minutes. We'll hear from Ms. Sweeney. Good morning, Your Honors. Counsel, may it please the court, Sarah Sweeney on behalf of the United States. Nunez and Sanders, I'll start with the indictment. The indictment was appropriately worded here. It pretty much exactly tracks the wording, the indictment that this court approved in Sanders. It, it distinguishes between the fact that a defendant is involved in a controlled substance conspiracy and then says, and that conspiracy involves a particular amount and quantity of cocaine. And by doing that, you know, as this court has, has found in multiple decisions, there, it is simply not an element of the offense. And it is not something that the United States has to prove that Mr. Robinson knew that cocaine was involved here. The jury instructions that were given here followed the 11th circuit pattern. The United States, once it realized at trial that part of Mr. Robinson's defense was that he may have believed that he was dealing cocaine rather than marijuana. We did ask for the instructions to be amended. He thought he was dealing in marijuana instead of cocaine. We did ask for those instructions to be the nature of the substance is not an element of the offense. The district court judge did not do that. He read the pattern instructions. But as you pointed out, judge Carnes, that's true in, in almost probably the vast majority of drug cases. And then I'd also point to the Supreme court precedent of pistachio versus United States was, which is five 77 U S two 37, which says that this court judges sufficiency based on the elements of the offense, not based on the jury instructions that are given. Regardless here, the evidence was sufficient to show that Mr. Robinson knew that he was dealing in cocaine. And that's detailed in, in the United States brief. He engages in multiple calls. He actually received a package of cocaine. He was destined. He was intended to receive two packages of cocaine. Only one of them was actually delivered, but he did receive one. So he knew that was cocaine. Mr. Robinson relies greatly on the agent's answer to one question in which he did say that Mr. Robinson didn't know the substance that was in the package that was destined for Daytona beach. But I'd point out a couple of things about that. One is that's one piece of evidence that the jury took into consideration among many other pieces of evidence. That's not determinative. And just as it wouldn't have been determinative, if the agent had said, yes, he did know that there was cocaine in that package, had the agent answered the question the other way, that wouldn't mean that we automatically won. So it also does not mean that we automatically lose particularly in light of the other overwhelming evidence here. And then moving on to the, the Brady allegation that my colleague was I, I, it is right because the knowledge of the substance is not an element that information, whatever, whatever was there. One, it was already in front of the jury. The agent admitted that Mr. Robinson engaged in marijuana trafficking, that he had an arrest for it. And he admitted that Mr. Robinson, that, that the agent understood from Franny, that Mr. Robinson got his marijuana from Franny. So there's just really nothing left in that proper recording that wasn't already before the jury. And even at that, at that point, that information wasn't exculpatory for the same reasons that we discussed with respect to Nunez and Sanders. It's not an element of the offense, so it's not exculpatory. And then ultimately it was also cumulative. I think I've addressed all the points that my colleague made. I don't intend to address any of the other issues unless the questions for me on them. I have a question about the, the issue on the motion to suppress. Yes. It seems to me that the way the district court dealt with that was, was pretty cursory. And, and I guess what I'm thinking about is if the government's position was that it was clear that Robinson was the intended recipient of the packages, then why didn't he have standing to Brian Stein? So your honor, the it's first of all, I guess I'll start with how the district court judge addressed the motion. And I agree with you. It's, it's a one, it's like a handwritten notation, a one sentence order saying that the, the warrant was sufficient on other grounds. I'm sorry, the affidavit was sufficient on other grounds. But this court can affirm on any basis, obviously, even, even with, despite the fact that the district court didn't reach the standing question here. But the, so first the, my primary, or I'm sorry, my first point is that Mr. Robinson has the burden to show that he has an expectation of privacy, even though our evidence at trial showed that the, the box contained drugs that he was expecting to receive. That does not mean that he has an expectation of privacy. And you can see that in cases like Smith and like Brown that are portion of the brief related to standing. In Smith, a defendant directed an envelope to someone else's house that contained drugs. And even though he was the intended recipient, this court found that he didn't have standing because he was neither the addressee nor the sender of the envelope, and he directed it to a location that he did not control. And so that I don't think the fact that Mr. Robinson intended to receive the drugs is with respect to standing, even though he's known that that was an issue that the government intended to rely on since the district court proceedings, we raised it below, we raised it in our, he didn't address it in his opening brief, and even though he was on notice, and we raised it in our brief here, and there was no reply to that. So there, there's simply, he has done nothing to meet his burden to show standing. As to the alter ego argument, I, I think it's a really interesting issue. And I think it's one that this court has not resolved yet. But I don't think you need to do it here. For many of the reasons that we just discussed, he doesn't have standing. If you chose to reach the issue, we would ask that the, the idea of using an alter ego, or an alias, that's not a one use thing that's designed solely to distance oneself from criminal activity. In the, the concurrence in the Pitts case from the Seventh Circuit, the judge there discusses, you know, that Ann Landers is a, is a nom de plume, that is something that someone uses regularly and repeatedly, you may have a privacy interest in that. But if you use an alter ego, or I'm sorry, if you use an alias, solely for one, one time use to distance yourself from crime, that's not a privacy interest that society is prepared to accept as reasonable. I'd also point out here that Freeney, Mr. Robinson's co-conspirator, directed other conspirators to use that alias, Brian Stein, when it suited his purposes. When he needed someone to call the post office to try to find this missing package, he didn't tell Robinson to call as Brian Stein, he told another conspirator to do it. And that's because it really wasn't any one person's alter ego, it was instead a, a, a, a screen to prevent the detection of, of who exactly was involved in this conspiracy. All right, if there are no other questions, thank you very much, your honors. Thank you, Ms. Sweeney. Mr. Irvin, you've got five minutes. Yes, I'll start with the last part, the last part where the United States was asked to comment on the fact of the, the suppression issue. We believe that we did address the suppression issue in our brief. All we do, we did not go into any extended conversation regarding it. In this particular instance, the United States wants to have it both ways. In one instance, this wants to say that he doesn't have standing to raise an objection on the basis of a motion to suppress. And then on the other one, it wants to say that he's part of a conspiracy and the package was intended for, for him. It wants to have counsel. And I understand it seems like kind of a catch 22 a little bit, but, but the problem is it is the defendant's burden to establish standing. And so at the time of the motion to suppress, the government does not have any burden there. And what the government proves at trial, when it's got the burden to prove the allegations against your client is something separate and distinct from the defendant's obligation to establish a reasonable expectation of privacy when he files a motion to suppress. So can you address for us why he had a reasonable expectation of privacy in that package, please? Well, I believe we addressed at the time of the motion to suppress, or we addressed that in our particular motion with, with the district court, that there was evidence support, the fact that he was going to the post office to retrieve, retrieve this particular package. It also, I believe there was evidence of the fact that he even sought to find out where the package was at that particular time. We asked at that particular time that his expect that if he in fact had that was seeking that particular package, that that was an expectation of privacy in the particular package. Now, what about the fact that, that it wasn't addressed to him and his name, and also that there were other people who were using the alias Brian Stein to check up on the package? How does that affect the analysis, if at all? We think the expectation is to the address. The government has addressed the particular part about who the package was to, but it went to that particular address. And that particular address is associated with Benjamin Robinson, Judge Rosenbaum. Thank you, counsel. Okay. And finally, with respect, back to the, the, the government's position about the testimony that came forth at trial from agent Dahl, the United States had Mr. Freeney available to them as well as other people available to them at that particular time that they could have called in. We were hamstrung with the, with the witnesses that we had. In that particular case, we still believe that the evidence was insufficient to establish the fact that Mr. Robinson was part of any particular conspiracy to engage in the trafficking of, of cocaine. With respect to the fact of whether or not it must merely be a controlled substance as, as a standard versus the specific content of the particular package. We once again, believe that if we take a closer look at Sanders and we take a closer look at Nunez, that those particular cases in and of themselves speak to the fact about the facts of the case being pertinent with respect to any arguments that are being made with respect to just the that's it for the appellant. Thank you, counsel.